Clerk's Office
Filed Date:
9/12/2024
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEFAN JEREMIAH,

                            Plaintiff,

            -against-

5 TOWNS JEWISH TIMES, INC.,

                            Defendant.

**MEMORANDUM & ORDER**

**22-CV-5942 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

On October 4, 2022, Plaintiff Stefan Jeremiah commenced this action against Defendant 5 Towns Jewish Times, Inc., for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501, *et seq.* (*See* Compl. (Dkt. 1) ¶¶ 43-51.) The Clerk of Court entered a certificate of default for Defendant's failure to answer or respond to the Complaint on December 5, 2022. (*See* Entry of Default (Dkt. 9).) Plaintiff subsequently moved for default judgment which this court granted as to liability only. (*See* Mot. for Default J. (Dkt. 11); September 5, 2023 Mem. & Order (Dkt. 21) at 1.) Having found that Plaintiff failed to provide sufficient evidence to determine the proper amount of damages and attorneys' fees, the court denied that request without prejudice to Plaintiff providing further evidence at a later date. (September 5, 2023 Mem. & Order at 1.) Plaintiff has since renewed his motion for statutory damages, attorneys' fees, and costs, which the court referred to Magistrate Judge Cheryl L. Pollak for a Report and Recommendation ("R&R"). (*See* Amended Mot. for Default J. (Dkt. 25) at 1; January 10, 2024 Order Referring Mot.) On August 26, 2024, Judge Pollak issued the annexed R&R, recommending that Plaintiff be awarded $5,000 in statutory damages, $765 in attorneys' fees, and $440 in costs. (R&R (Dkt. 36) at 19.)

No party has objected to Judge Pollak's R&R, and the time to do so has passed. *See* Fed. R. of Civ. P. 72(b)(2). Therefore, the court reviews the R&R for clear error. *See Velasquez v. Metro Fuel Oil Corp.,* 12 F. Supp. 3d 387, 397 (E.D.N.Y. 2014). Having found none, the court ADOPTS the R&R in full.

Accordingly, the court GRANTS in part and MODIFIES in part Plaintiff's Amended Motion for Default Judgment. Plaintiff shall be awarded $5,000 in statutory damages, $765 in attorneys' fees, and $440 in costs.

SO ORDERED.

Dated:    Brooklyn, New York
          September \\, 2024

                                             s/Nicholas G. Garaufis
                                         NICHOLAS G. GARAUFIS
                                         United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEFAN JEREMIAH,

                              Plaintiff,

                -against-

5 TOWNS JEWISH TIMES, INC.,

                              Defendant.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22 CV 5942 (NGG) (CLP)

**POLLAK**, United States Magistrate Judge:

On October 4, 2022, plaintiff Stefan Jeremiah ("plaintiff" or "Jeremiah") commenced this

action against defendant 5 Towns Jewish Times, Inc. ("defendant" or "5 Towns"), alleging

violations of the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, arising out of the unauthorized

reproduction and public display on defendant's website of a copyrighted photograph owned and

registered by plaintiff Jeremiah (the "Photograph"). (Compl.[1]). Currently pending before this

Court is plaintiff's Amended Motion for Default Judgment (the "Motion" or "Mot") (ECF No.

25), which was referred to the undersigned for a Report and Recommendation. (Electronic

Order, dated January 10, 2024).

                              BACKGROUND

The relevant facts are set out in detail in the Court's earlier Report and Recommendation,

filed August 9, 2023 ("R&R") (ECF No. 19), and incorporated by reference herein. Thus, only

the salient facts relevant to the issue of damages will be repeated here.

Plaintiff is a professional photographer who licenses his photographs for a fee. (Compl.

¶¶ 2, 5). Defendant 5 Towns owns and operates a website at www.5tjt.com (the "Website"). (Id.

¶ 3). According to plaintiff, defendant posted on its Website an original photograph taken by

---

[1] Citations to "Compl." refer to the plaintiff's Complaint, filed October 4, 2022. (ECF No. 1).

1

plaintiff depicting the arrest of Tiffany Harris on January 1, 2020.  (Id. ¶ 18, Ex. 1).  Plaintiff

claims that on April 11, 2022, he observed the Photograph on the Website in a story dated

January 28, 2020.  (Id. ¶ 21, Ex. 2).  Plaintiff asserts that defendant had not licensed or otherwise

obtained plaintiff's permission to publish the Photograph.  (Id. ¶¶ 24–25).

On October 4, 2022, plaintiff thereafter commenced this action seeking statutory

damages for willful copyright infringement, pursuant to 17 U.S.C. §§ 501, 504.  (Compl. ¶ 46).

When defendant failed to answer or respond to the Complaint, a default was entered by the Clerk

of Court on December 5, 2022 (ECF No. 9), and thereafter, plaintiff moved for default judgment.

(ECF No. 11).

On August 9, 2023, this Court issued a Report and Recommendation, finding that

plaintiff had alleged the elements necessary to establish that defendant had infringed plaintiff's

copyrighted photograph, and recommending that the motion for default judgment as to liability

be granted.  (R&R at 15).  However, with respect to plaintiff's request for an award of statutory

damages, the Court found that plaintiff had failed to provide evidence of the actual date of

publication of the Photograph, information critical to a determination as to whether plaintiff was

entitled to an award of statutory damages and attorneys' fees.  (Id. at 14).  Accordingly, the

Court recommended that the request for statutory damages and attorneys' fees be denied without

prejudice to plaintiff providing evidence of the date of first publication.  (Id. at 15).

On September 5, 2023, the district court adopted the Report and Recommendation in full.

(ECF No. 21).  Although plaintiff notified the court by letter dated October 2, 2023, that the

parties had reached a settlement in principle, a subsequent letter filed by plaintiff on December 4,

2023, indicated that the settlement had fallen through due to defendant's lack of response to

plaintiff's efforts to memorialize a written settlement agreement.  (ECF No. 24).

Thereafter, on December 4, 2023, plaintiff filed an Amended Motion for Default Judgment. On January 10, 2024, that amended motion was then referred to the undersigned by the district court. (Electronic Order, dated January 10, 2024).

On February 21, 2024, defendant attempted to file an Answer to the Complaint. (ECF No. 29). The Court issued an Order on February 23, 2024, indicating that default judgment had been previously entered as to liability and therefore the Answer was ineffective. (ECF No. 30). The Court Order indicated that defendant could file a motion to vacate the prior default judgment or oppose the plaintiff's motion as to damages. (Id. at 3). Defendant thereafter filed an affidavit/declaration in opposition to the Amended Motion, and plaintiff submitted a reply thereto. (ECF Nos. 31, 34).

On March 28, 2024, the Court held an inquest hearing at which counsel for both plaintiff and defendant appeared. (See Minute Entry, dated March 28, 2024; see also Hr'g Tr.[2]). During that hearing, counsel for defendant clarified that defendant seeks to challenge the damages awarded to plaintiff, but not the district court's entry of default judgment as to liability. (Hr'g Tr. at 2:19). During the inquest hearing, counsel for both the plaintiff and defendant presented their arguments with respect to the amount of statutory damages to which plaintiff is entitled. (Id. at 7:22–25, 8:24–25, 9:1–7).

## DISCUSSION

As noted, the issue of liability has already been determined and since defendant has not moved to vacate the earlier default judgment as to liability, the Court addresses here plaintiff's renewed request for statutory damages. Having considered the arguments of the parties, the

---

[2] Citations to "Hr'g Tr." refer to the Transcript of Civil Cause for Inquest Hearing held March 28, 2024, which was filed on April 10, 2024. (ECF No. 35).

Court respectfully recommends that plaintiff be awarded statutory damages in the amount of $5,000.

I.   <u>Legal Standards</u>

"In general. . . an infringer of copyright is liable for . . .the copyright owner's actual damages and any additional profits of the infringer . . . ." 17 U.S.C. § 504. However, the Copyright Act also allows plaintiffs to sue for "statutory damages" in lieu of actual damages and profits once an act of infringement has been shown. <u>Island Software Computer v. Microsoft</u>, 413 F.3d 257, 262 (2d Cir. 2005). Statutory damages are available even when there is no evidence of defendant's profit or plaintiff's losses sustained as a result of the infringement. <u>See Starbucks Corp. v. Morgan</u>, No. 99 CV 1404, 2000 WL 949665, at *2 (S.D.N.Y. July 11, 2000), <u>report and recommendation adopted</u>, No. 99 CV 1404 (S.D.N.Y. Aug. 8, 2002). The statute provides for an award in an amount of "not less than $750 or more than $30,000 as the court considers just," for each work where the plaintiff can demonstrate that the copyright has been infringed. 17 U.S.C. § 504(c)(1). "Under the Copyright Act, there is no need for an infringer to act willfully for it to be sanctioned." <u>Island Software Computer v. Microsoft</u>, 413 F.3d at 265. However, when the infringement is willful, enhanced statutory damages ranging to as much as $150,000 may be awarded. 17 U.S.C. § 504(c)(2).

It is well established that plaintiff has the burden to prove damages and establish his entitlement to recovery. <u>See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1080 (1993). When a plaintiff elects statutory damages under the Copyright Act, "damages are calculated based on the number of copyrighted works and . . .not on the number of incidents of infringement." <u>Fitzgerald v. CBS Broadcasting, Inc.</u>, 491 F. Supp.2d 177, 182 (D. Mass. 2007) (citing <u>Venegas-Hernandez v. Sonolux Records</u>,

370 F.3d 183, 194 (1st Cir. 2004)).  The Second Circuit has outlined a number of factors for

courts to consider in determining the appropriate measure of damages:

> (1)The infringer's state of mind; (2) the expenses saved, and
> profits earned, by the infringer; (3) the revenue lost by the
> copyright holder; (4) the deterrent effect on the infringer and third
> parties; (5) the infringer's cooperation in providing evidence
> concerning the value of the infringing material; and (6) the conduct
> and attitude of the parties.

Bryant v. Media Right Prods., 603 F.3d 135, 143–44 (2d Cir. 2020).

In addition, a plaintiff must prove willfulness before they are entitled to an enhanced

award of statutory damages.  To prove willfulness under the Copyright Act, the plaintiff must

show that:  1) "defendant was actually aware of the infringing activity," or 2) "defendant's

actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's

rights."  Island Software Computer v. Microsoft, 413 F.3d at 263; see also Yurman Design, Inc.

v. PAJ, Inc., 262 F.3d 101, 112 (2d Cir. 2001) (holding that willfulness "means that the

defendant recklessly disregarded the possibility that its conduct represented infringement").

II.   Analysis

Here, plaintiff seeks an award of $10,000 for the single incident of defendant's display of

the Photograph, as contained in another entity's news article; he does not seek enhanced

damages and thus, there is no need to demonstrate willfulness on the part of the defendant.  (Mot.

at 1).  As explained in this Court's earlier Report and Recommendation, statutory damages and

attorney's fees are not available if the infringement of a (1) "copyright on an unpublished work

commenced before the effective date of its registration" or (2) the "infringement . . . commenced

after first publication of the work and before the effective date of its registration. . . ."  17 U.S.C.

§ 412.  Plaintiff alleged in the Complaint that the effective date of registration of the Photograph

was March 29, 2020.  (Compl. ¶ 20).  Since the alleged infringement occurred on January 28,

2020—prior to registration—the plaintiff needed to establish that the date of first publication was

prior to the infringement in order to fall within subsection (1) of Section 412.  (R&R at 13–14).

Since the date of first publication was not alleged in the Complaint or established in plaintiff's

original motion for default judgment, the Court was unable to determine if, as required, the

Photograph was published on or before the date of infringement.  (Id.)

        In support of plaintiff's renewed motion for default judgment, plaintiff Jeremiah has

submitted a Declaration in which he states that he first published the Photograph by

commercially licensing it to the <u>New York Post</u> ("<u>N.Y. Post</u>"), which ultimately published it in

an article.[3]  (Jeremiah Decl.[4] ¶ 4, Ex. B).   He also confirms in his Declaration that he registered

the Photograph on March 29, 2020.[5]  (Id. ¶ 5).  Thus, plaintiff has established that because the

first publication of the Photograph occurred on January 1, 2020, and the alleged infringement

occurred thereafter on January 28, 2020, he would be entitled to statutory damages and fees

under the Copyright Act.  Plaintiff's counsel confirmed as much during the inquest hearing

before this Court on March 28, 2024.  (Hr'g Tr. at 3:1–16).

        In opposition to plaintiff's request for damages, defendant 5 Towns submitted an

affirmation from its president, Larry Gordon ("Mr. Gordon"), indicating that defendant owns a

traditional newspaper which is circulated for free in Brooklyn, Nassau, and Queens, and in

Miami.  (Gordon Aff.[6] ¶¶ 1, 3).  Mr. Gordon explains that 5 Towns also has a website which

---

[3] http://nypost.com/2020/01/01/hate-crime-suspect-tiffany-harris-arrested-for-third-time-in-three-days/
[4] Citations to "Jeremiah Decl." refer to the Declaration of Stefan Jeremiah, filed December 4, 2023.  (ECF No. 26).
[5] In his Declaration, Jeremiah states that he registered the Photograph on March 29, 2023.  (Jeremiah Decl. ¶ 5).  However, given that Jeremiah states that he registered the Photograph "within three months of initial publication," the Court assumes that this reference to "2023" is an error, and Jeremiah intended to state that he registered the Photograph on March 29, 2020.  (Id.)  Indeed, Jeremiah filed the applicable copyright registration certificate, which states the date of registration as March 29, 2020.  (Jeremiah Decl, Ex. C (ECF No. 26-3)).
[6] Citations to "Gordon Aff." refer to the affirmation of Larry Gordon in Opposition to Plaintiff's Renewed Motion for Default, filed February 26, 2024.  (ECF No. 31).

refers to articles in the newspaper and allows other Jewish content organizations to post content on the site.  (Id. ¶ 3).  The content of the website changes at least every week and there are no access fees to view the site.  (Id. ¶¶ 3, 4).  Based on plaintiff's allegation that he viewed the Photograph on defendant's website in April 2022, Mr. Gordon speculates that he must have seen it on "some archiving storage site because it would not have remained on Defendant's web pages that long."  (Id. ¶ 6).  He contends that the article posted on the website was from another news outlet; "no-one on my staff wrote the article."  (Id. ¶ 7).  Based on the date on the Photograph, Mr. Gordon states that this is the date that the article appeared in an Israeli newspaper and not the date that it appeared on defendant's website, which he contends was January 30 or 31, 2020. (Id. ¶ 9).  He further represents that, based on the practice of the defendant, the article and picture would not have appeared on the website until the end of the week.  (Id. ¶ 10).[7]

Defendant also argues that it is "an innocent infringer."  (Id. ¶ 12).  Citing 17 U.S.C. § 504(c)(2), defendant contends that the court is precluded from awarding statutory damages "where such a person or institution infringed copyrighted material in the honest belief that what they were doing constituted fair use."[8]  (Id.)  Defendant notes that the Photograph was of a street arrest in New York City, that there was no notice that the Photograph was owned by anyone, that there was never a request to take down the Photograph, and that defendant only learned about the infringement in 2022 when suit was filed.  (Id. ¶¶ 13–15).  Indeed, defendant contends that the Photograph was sent to defendant by a third-party Israeli news outlet that wrote the story.  (Id. ¶ 13).  During the inquest hearing held before this Court, defendant's counsel explained that

---

[7] Defendant suggests that since the copyright notice was not filed until March 29, 2020, and by that time the article was no longer on the website, it should not be held liable.  (Gordon Aff. ¶ 11).  Not only has liability already been determined, but as discussed above, statutory damages can be awarded when the infringing conduct occurs after the date of first publication even before registration.

[8] Defendant conflates the mistake in fair use and innocent infringer provisions.  The Court addresses this distinction below, in the "Mistake and Innocent Infringer Provisions" section.  (See p. 9 infra).

defendant "just puts up things that are given to him from usually Jerusalem, the Jewish
Telegraph Service," and when defendant found that photo on the website, there was "no
indication that . . . there was a copyright on it." (Hr'g Tr. at 3:21–23, 4:3–4). Finally, defendant
contends that it mitigated any damage by removing the Photograph within a week of its posting
on the website. (Gordon Aff. ¶ 19).

   In response to defendant's argument of "innocent" infringement, plaintiff contends that
not only has defendant failed to show that it believed it was engaging in fair use of the
Photograph at the time of its posting, but also that defendant's fair use argument is "objectively
unreasonable on the merits."[9] (Pl.'s Reply[10] at 1). Specifically, plaintiff argues that as a news
organization, defendant is "charged with knowledge of U.S. Copyright law." (Id. at 2 (quoting
Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172 (2d Cir. 1983))). Plaintiff contends
that defendant's act of infringement should be deemed willful or at least in reckless disregard of
plaintiff's rights given that defendant should have known that a license was required to re-
publish the Photograph on the website and yet defendant made no effort to determine if such a
license was needed. (Id. at 3). During the inquest hearing, plaintiff's counsel made the same
argument, claiming that defendant had the responsibility "to conduct due diligence" and "know
the source of the image." (Hr'g Tr. at 6:16–17). Plaintiff urges the Court to consider
defendant's recent history of being sued for infringement[11] in assessing the appropriate award of
statutory damages. (Pl.'s Reply at 3.)

---

[9] Like defendant, plaintiff also conflates innocent infringement and mistake in fair use. As noted above, the
Court discusses the distinction between the two below.
[10] Citations to "Pl.'s Reply" refer to Plaintiff's Reply to Defendant's Opposition, filed March 18, 2024.
(ECF No. 34).
[11] Mr. Gordon indicates in his affirmation that the instant lawsuit is the second one brought by plaintiff's
counsel's firm in a four-week time frame, "over a photo with no or little artistic value." (Gordon Aff. ¶¶ 16, 17).

8

A.     Mistake and Innocent Infringer Provisions

Plaintiff seeks an award of statutory damages in the amount of $10,000 for the display of the Photograph on defendant's website.  (Mot. at 1).  Defendant argues that "the Court is precluded from awarding any statutory damages" because it believed that its actions "constituted fair use," pursuant to 17 U.S.C. § 504(c)(2). (Gordon Aff. ¶ 12).  The "belief of fair use" provision provides that:

> The court shall remit statutory damages in any case where an
> infringer believed and had reasonable grounds for believing that
> his or her use of the copyrighted work was a fair use under section
> 107, if the infringer was:  (i) an employee or agent of a nonprofit
> educational institution, library, or archives acting within the scope
> of his or her employment . . . or (ii) a public broadcasting entity . . .
> as defined by section 118(f) . . . that infringed the work by
> performing a published nondramatic literary work or by
> reproducing a transmission program embodying a performance of
> such a work."

17 U.S.C. § 504(c)(2).

As a preliminary matter, defendant does not qualify under this provision because it is not "an employee or agent of a nonprofit educational institution, library, or archives" or "a public broadcasting entity" engaged in the relevant sort of publication.  Moreover, and in any event, defendant fails to meet its burden of proving that it "believed and had reasonable grounds for believing" that the work "was a fair use" as required to take advantage of the exception to statutory damages.  Not only does defendant make no attempt to explain the reasoning behind defendant's supposed belief, but as plaintiff argues, defendant, as a news source,  is required to be aware of and adhere to copyright law.  (Pl.'s Reply at 2).  During the inquest hearing held before this Court, defendant's counsel explained that "[p]eople send in articles.  [Defendant] look[s] at that and they ask them, is there any problems with this, and they do their due diligence with regard to the person who sends them the newspaper."  (Hr'g Tr. at 9:4–7).  However, in the

9

instant case, defendant clearly did not conduct its due diligence. Indeed, plaintiff's argument is well taken. Not only should defendant, as a news organization, be alert to the potential copyright issues surrounding the posting of items on its website, see Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172; Van Der Zee v. Greenidge, No. 03 CV 8659, 2006 WL 44020 (S.D.N.Y. Jan. 6, 2006), but defendant's failure to take steps to ensure that the copyright laws were being followed constitutes reckless disregard of its responsibilities. Therefore, the Court finds that defendant has not met its burden of demonstrating that its actions "constituted fair use" in the context of 17 U.S.C. § 504(c)(2).[12]

As for defendant's claim that it was an "innocent" infringer, both defendant and plaintiff appear to conflate this argument with its belief of fair use defense. (Gordon Aff. ¶ 12; Pl.'s Reply at 1). However, the Court notes that unlike the belief of fair use provision, which states that "the court shall remit statutory damages," the "innocent infringer" provision provides courts with the discretion to reduce statutory damages "to a sum of not less than $200" in the event that "the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2).

In the Second Circuit, "[t]he burden is on the defendants to establish that any infringement was innocent." D.C. Comics Inc. v. Mini Gift Shop, 912 F. 2d 29, 35 (2d Cir. 1990). While this provision does not have the same requirement that defendants fit into one of two narrow categories of infringer, as with the belief of fair use provision, the same finding with

---

[12] The Court notes that defendant may have intended to raise fair use as a defense to liability. However, in that case, as other courts in this Circuit have held, "[f]air use is an affirmative defense; therefore, a defendant accused of copyright infringement bears the burden of showing that its use of a work was fair." Fioranelli v. CBS Broadcasting Inc., 551 F. Supp. 3d 199, 228 (S.D.N.Y. 2021) (citing Authors Guild v. Google, Inc., 804 F. 3d 202, 213 (2d Cir. 2015)). By failing to seek to vacate the default and only challenging the damages awarded to plaintiff, as opposed to the district court's entry of default judgment as to liability (see Hr'g Tr. at 2:19), defendant effectively forfeited the fair use defense to liability.

respect to defendant's status as a news source applies here.  Indeed, defendant maintains the responsibility of adhering to copyright laws, and therefore, it cannot claim that it "had no reason to believe that [its] . . . acts constituted an infringement of copyright."  Moreover, defendant has not presented any argument in support of the application of the innocent infringer defense to this case.  Accordingly, the Court finds that defendant has failed to raise a valid belief of fair use or innocent infringement defense to statutory damages pursuant to 17 U.S.C. § 504(c)(2).

B.    Calculation of Award

Given that defendant has failed to raise valid claims for mistake in fair use or innocent infringer provisions, the Court determines that plaintiff is entitled to statutory damages.  Since liability for infringement has already been determined based on defendant's default, and since plaintiff need not prove willfulness unless he is seeking enhanced damages, which he is not, the Court proceeds to consider the relevant factors in determining the appropriate award of statutory damages:  "(1) The infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties."  Bryant v. Media Right Prods., 603 F.3d 135 at 143–44.

Under the Copyright Act, statutory damages serve two purposes:  one is compensatory, and the other is punitive to discourage future violations by defendant and others.  Richard Feiner & Co., Inc. v. Passport Int'l Prods., Inc., No. 97 CV 9144, 1998 WL 437157, *2 n.13 (S.D.N.Y. July 31, 1998); CJ Prod. LLC v. Your Store Online LLC, No. 11 CV 9513, 2012 WL 2856068, at *3 (S.D.N.Y. July 12, 2012).  The trial court has wide discretion in settling the amount of a statutory damages award.  See Fitzgerald v. CBS Broadcasting, Inc., 491 F. Supp.2d at 190.  A

review of the caselaw reflects a wide range of awards for the infringement of a photograph. <u>See</u> <u>Burch v. Nyarko</u>, No. 06 CV 7022, 2007 WL 2191615, at *3 (S.D.N.Y. July 31, 2007).

With respect to the infringer's "state of mind," courts look to whether the defendant was aware of its infringement yet acted anyway. <u>See</u> <u>Castillo v. G&M Realty L.P.</u>, 950 F. 3d 155, 172 (2d Cir. 2020) (finding that the defendant "was 'willing to run the risk of being held liable for substantial statutory damages rather than to jeopardize his multimillion dollar luxury condo project'"). As noted above, the Court agrees with plaintiff that as a newspaper, defendant had the responsibility to conduct due diligence and maintain an awareness of applicable copyright laws. <u>See</u> <u>Fallaci v. New Gazette Literary Corp.</u>, 568 F. Supp. at 1173. Therefore, the Court cannot conclude that defendant had any reasonable excuse to be unaware of its infringement. Accordingly, the Court finds that the "state of mind" factor weighs in favor of the plaintiff.

With respect to the second and third relevant factors, plaintiff contends that because he is seeking statutory damages, there is no requirement for him to make a showing of his loss or defendant's profit. (Pl.'s Mem.[13] at 11). Some courts have taken the position advocated by plaintiff. <u>See</u> <u>Peer Int'l Corp. v. Max Music & Entm't, Inc.</u>, No. 03 CV 0996, 2004 WL 1542253, at * 2 (S.D.N.Y. July 9, 2004); <u>see also</u> <u>CJA Prods., LLC v. Your Stone Online LLC</u>, 2012 WL 2856068, fn. 4 (holding that a copyright owner may elect statutory damages "regardless of the adequacy of the evidence offered as to his actual damages and the mount of defendant's profits, and even if he has intentionally declined to offer such evidence, although it was available"). Other courts have held that "it is obviously incumbent upon the plaintiff to submit a record sufficient to support the amount of statutory damages that he is seeking." <u>Seelie v. Original Media Group LLC</u>, No. 19 CV 5643, 2020 WL 136659, at *2 (E.D.N.Y. Jan. 13,

---

[13] Citations to "Pl.'s Mem." refers to plaintiff's Memorandum of Law filed February 13, 2013. (ECF No. 12).

2020); see also Lowery v. Fire Talk LLC, No. 19 CV 3737, 2020 WL 5441785, at *3 (E.D.N.Y.

June 29, 2020), report and recommendation adopted, 2020 WL 5425768 (E.D.N.Y. Sept. 10,

2020) (holding that plaintiff "still has the ability — and the responsibility — to present some

minimal amount of evidence in support of the damages request").

     In this case, plaintiff has not provided the Court with any information as to what his

actual licensing fee would have been, nor any suggestion as to what actual damages he may have

suffered as a result of defendant's posting of the Photograph.  Plaintiff has not pointed to any of

the primary factors for determining an appropriate award of statutory damages in his arguments

supporting his request.  Indeed, the only information he has provided to assist the Court in

determining the appropriate award within the statutory limits of Section 702 is a listing of

various cases and the amounts awarded for the violations found therein.  (See Pl.'s Mem. at 17–

18, n.5).  As the court in Seelie v. The Original Media Group LLC,  noted, cases "are not

evidence, they are legal authorities," and, for every case cited awarding the amounts sought by

plaintiff, "there are more cases awarding different amounts. . . ," 2020 WL 136659 at *2, see also

Jerstad v. New York Vintners LLC, No. 18 CV 10470, 2019 WL 6769431, at *4 (S.D.N.Y. Jan.

6, 2020) (denying requested award of $10,000, and awarding $2,500 where plaintiff did not

explain why the other cases cited were appropriate comparisons and where he had not made

much of an effort to support a damages figure).

     Considering the cases cited by plaintiff here, some have awarded damages of $20,000

and $25,000 for the copying and posting of a single photograph, see, e.g., Sadowski v. Render

Media Inc., No. 17 CV 9045, 2020 WL 5968668 at *3 (S.D.N.Y. Oct. 8, 2020) (declining to

award the statutory maximum, instead awarding $25,000 where the defendant featured plaintiff's

photograph of a crime scene on its website without license); Myeress v. Elite Travel Group USA,

No. 18 CV 0340, 2018 WL 5961424 at *3 (S.D.N.Y. Nov. 14, 2008) (awarding $20,000 for the display of a photograph of South Florida on defendant's travel website, noting that the statutory maximum is often not awarded when there is no evidence of lost revenue), while others have awarded less, including several that have awarded only $5,000 in similar circumstances.  See, e.g., Seelie v. The Original Media Group LLC, 2020 WL 136659 at *6;  Bass v. Diversity Inc. Media, No. 19 CV 2261, 2020 WL 2765093 at *5 (S.D.N.Y. May 26, 2020).

Having reviewed the cases cited by plaintiff, and in the absence of any clearly applicable guidelines from the Second Circuit, the Court finds the analysis performed by the court in Seelie instructive.  In Seelie, the defendant copied the plaintiff's photograph from a licensed publication, removed the credit for the photograph in which the licensee had shown plaintiff's name, and published the photograph on its website without permission.  Seelie v. The Original Media Group LLC, 2020 WL 136659 at *1.  In analyzing the relevant factors, the court explained that plaintiff's "respectful refusal" to disclose his usual licensing fee "leads me to draw the inference that it is de minimis," noting that other courts had considered a multiplier of a licensing fee in determining a statutory award.  Id. at *4.  The court further noted that plaintiff had made no effort to determine the nature of the defendant's business and its wherewithal to pay a substantial damage award.  Id.  Although, as here, the plaintiff in Seelie argued that defendant's default was relevant to the issue of willfulness, more important to the court's analysis, was the removal of the accreditation of the photograph and the fact that, as a publisher, defendant should be familiar with the copyright laws.  Id.  In awarding $5,000, the court in Seelie explained that the most important factor in his analysis as to damages was the plaintiff's withholding of his actual licensing fee, leading the judge to conclude that an award of $5,000 was likely a

14

substantial multiple of the licensing fee and thus would satisfy the dual purposes of statutory damages. Id.

As in Seelie, plaintiff here has chosen not to provide any information regarding the revenue lost as a result of the infringement, nor has he provided the licensing fee charged to the N.Y. Post or to anyone else in connection with the specific Photograph, or of other licensing fees charged for his works. By contrast to the facts in Seelie, there is evidence before the Court indicating that since defendant did not charge for materials posted on its website, there does not appear to be any revenue or profits received by defendant in connection with the use of the Photograph. See Myeress v. Elite Travel Group USA, 2018 WL 5961424 at *3 (refusing to award the statutory maximum because of its inability to determine "anything regarding Defendant's profits as a result of the use of his Photograph").

In terms of deterrence, plaintiff has provided few facts to suggest that a high value award is necessary for deterrence in this case. While defendant is in the publishing industry, and "in a position to repeat the unauthorized reproduction of copyrighted material," Bass v. Diversity Inc. Media, 2020 WL 2765093 at *4 (internal quotations omitted), plaintiff's only evidence to suggest that defendant continues to infringe copyrights is another suit brought by plaintiff's counsel close in time to the instant case. (Pl.'s Reply at 3). At this time, without any further information regarding the outcome of that litigation, the Court finds that it does not weigh heavily in favor of a large award.

Plaintiff also argues that in determining the proper award, the Court should consider the defendant's willfulness as evidenced by its default in this case. (See id. at 13 (citing Entral Group Int'l LLC v. Honey Café on 5th, Inc., No. 05 CV 2290, 2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006). Even though plaintiff need not prove willfulness because he does not

15

seek enhanced damages, courts do take willfulness into consideration when determining the
amount of the award.  See Twin Peaks Productions, Inc. v. Publications Intern., Ltd., 996 F. 2d
1366, 1381–1382 (2d Cir. 1993) (finding that although "the District Court's award of $15,000
for each work infringed is sustainable with or without a finding of willfulness, we feel obliged to
review the challenge to willfulness finding because it may well have influenced … the amount of
the award").

     Although defendant in this case did default originally, it later engaged in efforts to settle
the case and then appeared and provided evidence in connection with the calculation of damages.
See Reilly v. Commerce, No. 15 CV 5118, 2016 WL 6837895, at *9 (S.D.N.Y. Oct. 31, 2016)
(holding that "not all willful conduct constitutes the kind of truly egregious conduct that justifies
maximum damages").   Moreover, the circumstances here suggest that the actual infringer was
the Israeli newspaper that printed the Photograph in the first instance and posted it on
defendant's website. (Gordon Aff. ¶ 9).  While that does not relieve defendant from its
obligation to review the content of its website for potentially infringing material, defendant in
this case did not affirmatively take action to copy the Photograph nor did defendant, as in Seelie,
remove identifying information from the Photograph.

     Defendant also cites as a factor the fact that, according to the defendant's practice, the
article containing the Photograph was posted for less than a week and then removed as part of a
normal practice of rotation.  (Id. ¶ 19).  Moreover, since plaintiff only discovered the
infringement two years later, there was no need for plaintiff to send notices of infringement to
defendant in an effort to remove the Photograph which had already been taken off the website.
During the inquest hearing, plaintiff's counsel argued that "the idea that [the photograph] was
only up for a week, I think we all know that that's not relevant… ." (Hr'g Tr. at 6:23–25).

However, while the length of the posting does not factor into the determination of the award here, the Court disagrees with plaintiff's assertion of irrelevance, as other courts have found that the amount of damages depends on whether the "defendant continued its infringing conduct despite receiving notices to end such activity." <u>Sadowski v. Render Media Inc.</u>, 2020 WL 5968668 at *3.

Having considered all of the relevant factors, including the fact that there is no evidence defendant profited from the infringing conduct, no evidence that, as in <u>Seelie</u>, the defendant took steps to hide the identification of the photographer, and the absence of any evidence of plaintiff's licensing fee, the Court respectfully recommends that plaintiff be awarded $5,000 in statutory damages.

III.    <u>Attorneys' Fees and Costs</u>

Plaintiff also seeks $1,080 in attorneys' fees and $440 in costs, pursuant to 17 U.S.C. § 505. (Mot. at 1). Under the Copyright Act, a "prevailing party . . . may recover full costs, including reasonable attorney's fees." 17 U.S.C. § 505. "Courts have found that compensation, including attorney's fees and costs, are appropriate where a defendant has defaulted." <u>Sadowski v. Render Media Inc.</u>, 2020 WL 5968668 at *4, (quoting <u>McCurry v. Accesory Network Grp., LLC</u>, No. 15 CV 9779, 2016 WL 11620045, at *6 (S.D.N.Y. Oct. 5, 2016), <u>report and recommendation adopted</u>, 2019 WL 4142491 (S.D.N.Y. Aug. 30, 2019)). In determining an award of fees, courts consider "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." <u>Bryant v. Media Right Prods., Inc.</u>, 603 F.3d 135, 144 (2d Cir. 2010).

In support of his application for attorney's fees, plaintiff has submitted the Declaration of James H. Freeman, a senior associate at Sanders Law Group, who graduated from the Benjamin N. Cardozo School of Law in 2000. (Freeman Aff. (ECF No. 13) ¶¶ 13, 14). Counsel represents that his current hourly rate is $600 per hour, which he asserts is reasonable for a "New York attorney" with over 20 years of experience in intellectual property law. (Id. ¶ 16 (citing a number of cases approving rates between $400 to $657 an hour for "partners" with significant experience in copyright law)).

The Court finds that this rate to be high compared to the rates awarded counsel in similar cases in the Eastern District of New York. See Seelie v. The Original Media Group LLC, 2020 WL 136659 at *6 (finding $425 per hour to be an appropriate rate for a partner in a copyright infringement case). Given the relative simplicity of the issues and the amount of work presented by this default, which involved researching and reviewing an eight-page complaint, drafting the application for entry of default and drafting the application for default judgment, the Court finds that such a high hourly rate is not justified here, particularly since the first motion for default judgment failed to provide the date of publication—an element critical to a determination of entitlement to statutory damages. (R&R at 14–15). Accordingly, the Court respectfully recommends that counsel be awarded fees at the rate of $425 per hour.

As for the number of hours expended in connection with this case, counsel's Declaration seeks fees for the 1.8 hours spent up until the first motion for default judgment. (Freeman Aff.. ¶ 17, at 3–4). Counsel has not submitted a supplemental declaration seeking any additional fees expended in connection with the revised motion for default. Accordingly, the Court finds the total number of hours requested to be reasonable. It is therefore respectfully recommended that plaintiff be awarded $765 in attorney's fees.

Finally, the Court has discretion to "order a copyright litigant to pay an adversary's court costs." Johnson v. Magnolia Pictures LLC, No 18 CV 9337, 2019 WL 4412483, at *4 (S.D.N.Y. Sept. 16, 2019). Plaintiff seeks an award of $440 in costs, representing $400 in filing fee, and $40 in service fees. Based on the documentation submitted, the Court respectfully recommends that plaintiff be awarded $440 in costs.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that plaintiff be awarded $5,000 in statutory damages, $765 in attorney's fees, and $440 in costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 23, 2024

                                    /s/ Cheryl L. Pollak
                                    _____
                                    Cheryl L. Pollak
                                    United States Magistrate Judge
                                    Eastern District of New York